UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(Central Division)

|  |  |
|---|---|
| In Re:<br><br>NASSIM AOUDE,<br><br>    Debtor.<br><br>AUTISM INTERVENTION SPECIALISTS, LLC,<br><br>    Plaintiff,<br>v.<br><br>NASSIM AOUDE,<br><br>    Defendant. | Chapter 7<br><br>Case No. 19-40474-CJP<br><br><br><br><br><br>**ADVERSARY PROCEEDING (COMPLAINT ) OBJECTING TO DISCHARGE OF DEBTS** |

Autism Intervention Specialists, LLC ("AIS"), creditor in the above-captioned bankruptcy case, by and through its counsel of record, hereby files against Nassim Aoude ("Aoude"), the debtor, this Complaint Objecting to Discharge of Debt pursuant to 11 U.S.C. §523(a)(2)(A) and §523(a)(4).

In support of this Complaint, AIS would show the Court as follows:

**Introduction and Relief Sought**

1. Aoude has listed AIS as a creditor in the disputed amount of $0.00 arising out of, Aoude alleges, a "[d]emand for legal fees regarding lawsuit involving debtor's business." AIS files this adversary complaint objecting to the discharge of the debt owed to AIS by Aoude pursuant to 11 U.S.C. §523(a)(2)(A) and §523(a)(4) which debt substantially exceeds the disputed amount of $0.00 assigned by Aoude.

2. 11 USC §523(a)(2)(A) bars the discharge of debts arising from false pretenses, false statements or actual fraud. Likewise, under 11 U.S.C. §523(a)(4), a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny" is exempt from discharge in bankruptcy proceedings. As set forth in more detail in this Complaint, the obligation of Aoude to AIS is a debt "for fraud" so as to bring the debt within the exemptions of 11 U.S.C. §523(a)(2)(A) and 11 U.S.C. §523(a)(4).

**Allegations in Support of Objection to Discharge**

3. AIS is a Massachusetts Limited Liability Company with a regular place of business in Worcester, Massachusetts. AIS provides services to help nearby individuals and families impacted by autism and related developmental disabilities. At the time of certain underlying events at issue in this case, AIS was a subsidiary of Pacific Child & Family Associates, LLC ("Pacific Child"), a Delaware Limited Liability Corporation with a regular place of business in Glendale, California.

4. Aoude is a natural person who resides at Unit 26 H Shrewsbury Green Drive, Shrewsbury, Massachusetts 01545.

5. In 2013, Aoude fraudulently induced Pacific Child into paying $4.5 million in cash and committing to other compensation arrangements in exchange for his cooperation in integrating certain business assets into AIS while he actually was planning and implementing a plan to compete with Pacific Child and AIS almost immediately after the closing.

6. Under an Equity Interest Purchase Agreement dated October 18, 2013, Pacific Child was the "Buyer" that paid $4.5 million cash at closing, and Aoude the "Seller." The transaction terms imposed on Aoude broad covenants not to compete and not to solicit for a "Restricted Period" from the closing until the later of the five-year anniversary from the closing

or the three-year anniversary of the termination of Aoude's employment with AIS. The only exceptions allowed Aoude to have a small (1%) passive investment in a publicly traded entity or to provide certain limited clinical work in a maximum of 15 cases. The non-solicitation provision made it a material breach for Aoude even "to hire" former AIS personnel, despite who made the first contact.

7. Through his fraudulent misconduct, Aoude deprived Pacific Child of the essence, and essential and dominant object, of the consideration for which it bargained in the transaction.

8. To hide his fraudulent misconduct, Aoude used his father, Salim Aoude (the "Father"), and his cousin, George Torbay ("Torbay"), as fronts for competitive operations that breached Aoude's contractual obligations and duty of loyalty to Pacific Child and AIS.

9. On October 22, 2013, just four days after the closing, Articles of Organization were filed in the name of the Father with the Commonwealth of Massachusetts for an entity named "Autism Behavioral Services, Inc." ("ABS") in Shrewsbury, Massachusetts. The Articles of Organization stated that the purpose of ABS was "PROVIDING INSURANCE FUNDED AUTISM SERVICES," and listed the Father as the holder of all corporate offices.

10. On the same date, Aoude caused the registration of the domain name absaba.com, which used his name as registrant and administrative contact, and the email address psych555@aol.com, and an address at 13 Centennial Drive, North Grafton, MA, which is the location at which ABS operated.

11. For nearly four months, Aoude kept his name out of any public filings for ABS with the Secretary of the Commonwealth of Massachusetts.

12. The website for ABS, at absaba.com, however, promoted Aoude as not only the CEO, but also the "Founder," contrary to the use of his Father as the registrant for the formation

of the entity. Thereafter, once his fraudulent scheme had been uncovered, the website for ABS began to list Aoude as the only executive on the "Our Team" page.

13. Aoude now held his new business out as follows: "Autism Behavioral Services provides insurance funded 1:1 home, clinic, and community based ABA programs created and supervised by a BCBA PhD candidate *throughout Massachusetts*." His website has also stated: "ABS is actively hiring ABA professionals."

14. The ABS website posted the following Mission Statement:

> Autism Behavioral Services' (ABS) mission is to improve the independence and social awareness of individuals diagnosed with Autism Spectrum Disorder (ASD) while simultaneously increasing the knowledge, skill set, and quality of life for both the individuals and families of those impacted by ASD. To achieve this, ABS specializes in providing services grounded in the principles of Applied Behavior Analysis (ABA), the only scientifically proven behavioral method effective in the treatment of ASD. ABS offers a comprehensive array of services including one-to-one in home therapy, social skills programs, community programs, adolescent programs, adaptive living programs, as well as many other group activities specifically targeting deficits that impact individuals with autism. Each service program is tailored exclusively to meet the needs of both the individual and the family.

15. The use of his Father as the registrant of ABS reflected Aoude's consciousness of guilt and effort to conceal his fraudulent activities and his immediate breach of the Purchase Agreement and Employment Agreement.

16. While ABS was registered in his name, the Father had experience in the automotive services industry and real estate industry, but not experience in the autism services industry. The Father's experience in the automotive services industry is reflected in a published decision by the United States Court of Appeals for the First Circuit, which stated the following:

> Because corrupt intent knows no stylistic boundaries, fraud on the court can take many forms. In our estimation, however, the present case is a near-classic example of the genre. Appellant's bad faith is manifest. By Aoude's own admission, he fabricated the purchase agreement; gave it to his lawyer; read the complaint before it was filed; realized that counsel, acting on his behalf, proposed

> to annex the bogus agreement to the complaint (thus representing it to be authentic); and nevertheless authorized the filing. Thereafter, Aoude and his counsel continued to act out the charade until, in the course of pretrial discovery undertaken by Mobil, Monahan revealed a glimmer of the truth. Even then, Aoude hedged his bets, forcing Mobil to piece together the sordid story bit by bit. Following Monahan's deposition testimony, more than three months elapsed before plaintiff asked to amend his complaint to substitute the real agreement for the invented one. The only conceivable reason for Aoude's elaborate duplicity was to gain unfair advantage, first in the dispute, thereafter in the litigation. The tactic plainly hindered defendant's ability to prepare and present its case, while simultaneously throwing a large monkey wrench into the judicial machinery. In our view, this gross misbehavior constituted fraud on the court.

*Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989). Nothing in that opinion or any other public record appears to reflect the Father's experience in the autism services industry before his name was used to form ABS.

17.     On August 29, 2014, Articles of Organization were filed in the name of Aoude's cousin Torbay, for Autism Behavior Center, Inc. ("ABC") in Worcester, Massachusetts.

18.     The Articles of Organization identified ABC's type of business as "AT HOME SUPPORT AND SERVICES FOR AUTISIC PERSONS."

19.     Prior to his name being used as the founder of ABC, Torbay worked in the tanning salon industry.

20.     In or about late August 2015, at least 20 children were observed at a single time being supervised by ABS personnel at its location. More than 20 different automobiles were observed dropping a child off or picking a child up at ABS during a limited time period.

21.     These activities at ABS were in addition to in-home services, which can account for a majority of the services in the autism services industry. Given that much if not most of the services that ABS provided was done in the client's home, these observations reflected that Aoude was not limiting his business efforts to a clinical practice that supervises the care for 15 or fewer families.

22. Aoude misrepresented his plan to supervise 15 or fewer cases, and instead has supervised and is supervising well over 15 cases in connection with his work at ABS and his interaction with Torbay and ABC.

23. Upon information and belief, ABS intakes mostly clients who have Blue Cross and Blue Shield insurance, while routinely referring prospects with other payor arrangements to ABC.

24. After leaving AIS, Aoude hired several former employees of AIS, contrary to his contractual obligations under Paragraph 5.6 of the Purchase Agreement and Section 9 of the Employment Agreement.

25. Had Pacific Child and AIS been aware of the Aoude's plan to withhold his cooperation in the integration of the business, his plan to compete, or the plans he had made for his competing venture at 13 Centennial Drive in North Grafton, as well as his plan to use his Father and his cousin, Torbay, to launch business beginning just days after the closing, Pacific Child and AIS would not have entertained let alone entered into the Transaction.

26. Immediately upon the closing, as a result of Aoude's fraudulent conduct, Pacific Child and AIS were deprived of the essence, and the essential and dominant object, of the underlying transaction.

27. When Pacific Child and AIS called out Aoude on his violation, Aoude responded by initiating an action in the Supreme Court of New York, County of New York against Pacific Child, AIS, and others, with an Index No.: 653386/2015 (the "New York Litigation"). Pacific Child, AIS and others counterclaimed against Aoude alleging, among other things, that Aoude violated the restrictive covenants. The counterclaim expressly alleged that Aoude "fraudulently induced" Pacific Child to enter into the underlying transaction.

28.     Thereafter, Pacific Child and AIS initiated an action in the Worcester Massachusetts Superior Court against ABS, ABC, Salim and Torbay with a Civil Action Number 2015-CV-01725 (the "Worcester Litigation") with respect to their role in Aoude's fraudulent scheme.  The Complaint in the Worcester Litigation again expressly alleged that that Aoude "fraudulently induced" Pacific Child to enter into the underlying transaction

29.     Ultimately, pursuant to the terms of a March 11, 2015 Settlement Agreement and Release (the "Settlement Agreement") between Nassim, ABS and ABC, on the one hand, and Pacific Child and AIS, on the other hand, the parties resolved the New York Litigation and the Worcester Litigation.

30.     The terms of the Settlement Agreement, among other things, provided that Nassim would defend and indemnify AIS against a lawsuit filed by Behavioral Concepts, Inc. and Jeffrey Robinson in the Worcester Superior Court, styled as *Behavioral Concepts, Inc. et al. v. Autism Intervention Specialists, LLC et al.*, Civil Action No. 12-2484, alleging defamation, tortious interference with advantageous and prospective business relations, and violation of the Massachusetts Unfair and Deceptive Trade Practices Act (M.G.L. c 93A, §11), against Aoude and AIS relating to events that took place before AIS was purchased by Pacific Child (the "Behavioral Concepts Lawsuit").

31.     The Behavioral Concepts Lawsuit remains pending.

32.     The Plaintiffs in the Behavioral Concepts Lawsuit allege that they were subject to allegedly defamatory statements on several websites during the period from September through November of 2012.  Plaintiffs have submitted a February 22, 2017 report of a designated damages expert opining that Plaintiffs' business purportedly sustained losses in the form of lost revenue, in an amount of $6,164,822, before application of interest and costs, and without

factoring in the attorneys' fees and trebling that may be imposed in connection with a claim under M.G.L. c 93A, §11.

33. AIS has and continues to incur substantial attorneys' fees and costs in connection with the Behavioral Concepts Lawsuit and had demanded that Aoude live up to his obligations to defend and indemnify AIS against the claims as set out in the Settlement Agreement.

34. By way of the pending bankruptcy proceedings, Aoude now seeks the discharge of his obligations to defend and indemnify AIS against the Behavioral Concepts Lawsuit.

**Cause of Action**
(Nondischargeability Under 11 U.S.C. §523(a)(2)(A) and §523(a)(4))

35. AIS incorporates the allegations contained in Paragraphs 1 through 34 of this Complaint as if fully set forth herein.

36. 11 USC §523(a)(2)(A) bars the discharge of debts arising from false pretenses, false statements or actual fraud. Likewise, under 11 U.S.C. §523(a)(4), a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny" is exempt from discharge in bankruptcy proceedings.

37. The obligation of Aoude to AIS is a debt "for fraud" so as to bring the debt within the exemptions of 11 U.S.C. §523(a)(2)(A) and §523(a)(4). Both the New York Litigation and the Worcester Litigation expressly allege that Aoude fraudulently induced the underlying transaction. The pleadings in both the New York Litigation and the Worcester Litigation are replete with allegations supporting the claim that Aoude acted fraudulently.

38. That the New York Litigation and the Worcester Litigation resolved the fraud theories against Aoude by way of the Settlement Agreement rather than continuing through judgment, does not alter the character of the underlying debt for fraud. Indeed, in *Archer v. Warner*, 538 U.S. 314 (2003), the United States Supreme Court considered the question of

whether a debt arising under a settlement agreement resulting from a state court action alleging fraud could be found nondischargeable under 11 U.S.C. § 523(a)(2)(A). The Supreme Court, recognizing a split among the circuits on the issue of whether debts arising out of the settlement of fraud theories are nondischargeable, granted certiorari. The Court determined that a settlement agreement or agreement for judgment does not convert a debt arising out of fraud to a dischargeable debt arising out of breach of contract. *Archer*, 538 U.S. at 322.

**WHEREFORE**, AIS prays for the following relief:

(i) That this Court deny the discharge of Aoude as to his debts to AIS pursuant to 11 U.S.C. §523(a)(2)(A) and/or §523(a)(4);

(ii) That AIS have and recover from Aoude his discretionary costs of this litigation;

(iii) That the costs of the clerk of court be taxed against Aoude; and

(iv) That AIS be awarded such other, further, and general relief to which it is entitled and which the Court shall deem to be just and proper.

> Respectfully submitted,
> AUTISM INTERVENTION
> SPECIALISTS, LLC,
> By its attorney,
>
> */s/ Peter J. Duffy*
> Barry S. Pollack, (BBO#642064)
> Peter J. Duffy (BBO#566682)
> POLLACK SOLOMON DUFFY LLP
> 101 Huntington Avenue, Suite 530
> Boston, Massachusetts 02199
> (617) 439-9800

## CERTIFICATE OF SERVICE

I hereby certify that the above document, filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on July 1, 2019.

> */s/ Peter J. Duffy*
> Peter J. Duffy