# EXHIBIT B

## COMMONWEALTH OF MASSACHUSETTS

WORCESTER, ss                                           SUPERIOR COURT
                                                        C.A. NO. 2012-2484C

BEHAVORIAL CONCEPTS, INC.,            )
JEFFREY ROBINSON, Ph. D.              )
    Plaintiffs,                       )
                                      )
v.                                    )
                                      )
                                      )
AUTISM INTERVENTION SPECIALISTS, LLC, )
NASSIM AOUDE,                         )
FADY KHOUZAMI,                        )
AMIN AOUDE,                           )
    Defendants.                       )
                                      )

## THIRD AMENDED COMPLAINT AND JURY DEMAND

### Introduction

The Plaintiffs bring this action against the Defendants for their calculated actions in using purportedly anonymous Internet posts to defame and commercially disparage the Plaintiffs in an effort to harm their business. The Plaintiff, Behavioral Concepts, Inc., also asserts claims against the Defendant, Autism Intervention Specialists, LLC, under M.G.L. c. 93A, section 11, for its extreme and outrageous behavior. The Plaintiffs seek damages and injunctive relief.

### Parties

1.    The Plaintiff, Behavioral Concepts, Inc. ("BCI") is a Massachusetts corporation with a principal place of business in the Worcester, Worcester County, Massachusetts.

1



EXHIBIT 1
AOUDE
McCARTHY REPORTING SERVICE
1-28-20

2. The Plaintiff, Jeffrey Robinson, Ph. D. ("Dr. Robinson") is an individual residing in Mansfield, Bristol County, Massachusetts. Dr. Robinson is the president and founder of BCI

3. The Defendant, Autism Intervention Specialists, LLC ("AIS"), is a Massachusetts limited liability company with a principal place of business in Worcester, Worcester County, Massachusetts.

4. The Defendant, Nassim Aoude ("Aoude"), upon information and belief, is an individual residing at 30 Rice Lane, Unit 7, Worcester, Worcester County, Massachusetts. Aoude is the founder and, at all times relevant, the manager of AIS.

5. The Defendant, Fady Khouzami ("Khouzami") is an individual residing at 30 Rice Lane, Unit 7, Worcester, Worcester County, Massachusetts. Khouzami is a first cousin of Aoude.

6. The Defendant, Amin Aoude ("Amin") is an individual residing at 70 Shrewsbury Green, Shrewsbury, Worcester County, Massachusetts. Amin is the younger brother of Aoude.

### Facts

7. For over thirty years, Dr. Robinson has worked with children who suffer from autism spectrum disorders ("ASD"). He holds a Ph. D. in Special Education from Boston College, a Master of Arts in Rehabilitation Counseling from Rhode Island College and a Bachelor of Arts in Political Science from George Washington University. Dr. Robinson has devoted his professional career to assisting children and their families.

8. Dr. Robinson founded BCI in 2002. BCI is a Worcester-based provider of direct and consultative services to public school districts and to families. It provides

highly specialized expertise in the field of ASD, working directly with faculty, children and their families in an effort to help maximize student potential, increase independence and enhance each individual's quality of life within their home, school and community. Dr. Robinson (and BCI) has worked and continues to work with the Worcester Public Schools for the past 15 years. Originally supporting six students, BCI now supports 118 students of the Worcester Public Schools.

9. On January 1, 2011, Massachusetts implemented the provisions of the statute entitled "An Act Relative to Insurance Coverage for Autism" ("ARICA") which, among other things, mandates that most insurers cover treatment for ASD as an approved medical therapy.

10. Prior to the implementation of ARICA, BCI worked with children and their families pursuant to contracts with school districts. Following the implementation of ARICA, BCI began the credentialing process with health insurance companies. Starting with United Behavioral Health, BCI developed contractual arrangements with other health insurance companies and by the fall of 2012 had developed contracts with all of the major private health insurance companies in the Commonwealth. The implementation of ARICA allowed BCI to expand its services model, complementing the services they provided via contracts with school districts with direct care to families and children covered by certain health insurances. It has grown the "insurance services" side of its practice deliberately but effectively. In fact, since January 2011 it has added fifty-five employees.

11. As word of BCI's entry into ARICA services spread, families began contacting BCI. Referrals came from the health insurance companies, private physicians,

3

MGH Ladders Program, UMASS Medical, special education Advocates, public school staff, and other families who had services provided by BCI.

12. BCI's hiring process has been straightforward: it places ads, screens resumes and conducts interviews of potential candidates. Dr. Robinson's role in the hiring process is limited to the hiring of management level staff.

13. During the period of December 2011 through March 2012, BCI hired three former AIS employees, each of whom responded to ads placed by BCI. BCI did not solicit these employees, and, as none of them are management level employees, Dr. Robinson played no role in their hiring. In fact, one of the employees hired had previously been employed by BCI for two years.

14. On March 15, 2012, after the third ex-AIS employee was hired by BCI, AIS, through counsel, sent what purported to be a "Cease and Desist" letter to BCI and Dr. Robinson. In the letter, AIS accused BCI and Dr. Robinson hiring the former AIS employees, despite the fact that they knew the AIS employees were subject to employment agreements that contained restrictive covenants. AIS also accused BCI and Dr. Robinson of directly soliciting clients whom AIS was servicing.

15. As these allegations were untrue, through counsel BCI and Dr. Robinson responded to the "Cease and Desist" letter, denying the allegations contained therein.

16. AIS thereafter chose not to pursue any claims against BCI and Dr. Robinson, which is not surprising, given that the claims it asserted are false.

17. After BCI started providing "insurance services" directly to children and families, it periodically received inquires from families who had received services from AIS, but were dissatisfied. In each of August 2011, January 2012, February 2012 and

4

May 2012, a family transferred the care of their child from AIS to BCI. BCI did nothing to directly solicit these families.

18. On September 18, 2012, an article describing the important work of BCI and Dr. Robinson was posted on the website, www.shrewsbury.patch.com.

19. Shortly thereafter, four families whose children were either receiving services from AIS, or were on its waitlist for services, decided to obtain their ASD care from BCI. The last of these families became a BCI client on October 29, 2012.

20. Within days, the Defendants took steps to defame BCI and Dr. Robinson.

21. Aoude, Amin, Khouzami and AIS, upon information and belief, implemented a systematic plan to libel and defame BCI and Dr. Robinson by positing false reviews about BCI and Dr. Robinson on as many as five websites (discovered to date).

22. The first known defamatory comments were discovered on the Shrewsbury Patch site on November 6, 2012. It stated: "I heard the owner of the company is a fraud and lost all of his school contracts." From Pete, "I'm actually an old friend of Dr. Robinson. We were close colleagues, I was privy to the shady business practices and unethical behavior he commonly engaged in. Yes, he did lose his school contracts due to unethical behavior. He is finishing the school contracts, then he is done there."

23. On November 6, 2012, three postings purportedly from former clients appeared on the website Manta. The three were similar in that all cited excessive delays in providing services to their children of 6 to 7 months. "Stay away from BCI as they have

5

made the last 2 years of my life completely miserable,,." read one, purportedly authored by Nancy Carlos.

24. On November 11, 2012, a purported review of BCI appeared on Yelp.com, a social networking, user review and local search website that apparently attracts approximately seventy million unique users each month (the "Yelp review").

25. The Yelp review bears the heading "DO NOT LET BEHAVIORAL CONCEPTS INC (BCI) NEAR YOUR AUTSITIC CHILD." The author of the Yelp post, whose handle is "Nancy C." goes on to assert the following:

> "Behavioral Concepts Inc. http://www.bciaba.org are liars and don't care a single bit about any of their families. They say they do Applied Behavior Analysis, discrete trial instruction, functional communication training, and academics, social and play skills, but they don't know any of these methodologies...I even found out while inquiring about BCI that they had recently lost all their school contracts because of the same type of services. I can't believe how unethical this company is...The website http://www.bciaba.org goes on to say that "Behavioral Concepts, Inc. was formed in July, 2002 by Dr. Jeffrey R. Robinson as an outgrowth of his professional work from the previous twenty-five years." Well why was this Dr. Jeffrey R. Robinson kicked out of every school system in the past 2 years? Why is BCI falling apart?"

26. None of the allegations in the post are true and each was made with knowledge of their falsity or with reckless disregard for their truth or falsity.

27. Upon information and belief, Aoude and AIS, directly or indirectly through Amin and Khouzami, commissioned the publication of the post.

28. At approximately the same time, BCI discovered a blog entitled http://behavioralconceptinc.blogspot.com had appeared on the Internet (the "Blogspot Post"). Not only does the content of the blog defame the Plaintiffs, but the domain name constitutes an infringement of BCI's common law trademark rights. Someone named

6

"Joe" is identified as posting the blog, and a "Nancy Grace C." is apparently the author of the post.

29. The wording of the blogspot post is remarkably similar to the Yelp Review. Its headline is "DO NOT LET BEHAVIORAL CONCEPTS INC (BCI) NEAR YOUR AUTSITIC CHILD." Like the Yelp Review, the blogspot post wrongly accuses BCI of being liars, falsely asserts that BCI has lost its school contracts and that Dr. Robinson has been "kicked out of every school system in the past 2 years."

30. The blogspot employed a so-called "search engine optimization technique" to ensure that the blogspot, and in turn the untrue and defamatory statements about the Plaintiffs, appeared primarily and prominently when Internet users searched for information about the Plaintiffs. In fact, until the blogspot was recently removed, the blogspot was the second most visited webpage in the entire Internet after BCI's own commercial website.

31. The Plaintiffs have determined that the blogspot post was authored at least by Khouzami. During the course of discovery, the Plaintiffs subpoenaed Google for the identity of the author of the blogspot. Google's response identified Khouzami as the author. See Subpoena Response attached as Exhibit 1. The Plaintiffs thereafter performed an assets search of Khouzami to ascertain whether there was any link between Khouzami and any of the other Defendants. The assets search revealed that Khouzami registered his motor vehicle to a certain address known as and numbered 30 Rice Lane, Unit 7, Worcester, Massachusetts, in December 2013. See Assets Search Results attached as Exhibit 2. Aoude purchased that property on February 6, 2013, with his fiancée, Tenney Hajnal ("Hajnal"). See Deed attached as Exhibit 3. As recently as May

7

21, 2014, Aoude incorporated a business, 13 Centennial Realty, LLC, and identified 30 Rice Lane, Unit 7, Worcester, Massachusetts, as his home address in incorporation papers filed with the Secretary of the Commonwealth. See Business Entity Summary attached as Exhibit 4. The foregoing confirms that Aoude and Khouzami reside together at 30 Rice Lane, Unit 7, Worcester, Massachusetts, and provides compelling evidence that they acted in concert in publishing the untrue and defamatory statements about the Plaintiffs at issue in this case. Further, Aoude and his fiancée, Hajnal, recently launched a "wedding website" for their upcoming nuptials this fall. The website contains a page link identifying all the members of the wedding party. Khouzami is identified on that page as a groomsman in the wedding of Aoude. See downloaded Wedding Page attached as Exhibit 5. Accordingly, it is clear from this overwhelming evidence that Khouzami, at least, was complicit with Aoude and AIS in committing the defamation alleged by the Plaintiffs.

32. The Plaintiffs have also determined that the other posts were authored by at least by Amin. The Plaintiffs deposed Aoude on September 23, 2014, and Aoude testified that he had confirmed his brother Amin was the author of the posts. See Page 52, Lines 4-9, of the Nassim Aoude Deposition Transcript attached as Exhibit 6.

33. The actions of the Defendants had a clear purpose to injure the business of BCI by defaming its reputation and the reputation of Dr. Robinson.

34. On information and belief, potential clients have been deterred from utilizing the services of BCI because of the false and defamatory posting made by the Defendants. At or about the time of the postings, BCI had three pending applications of clients for services, but all three clients withdrew their applications immediately

following the publications of the Defendants' untrue and defamatory statements. The applications involved families which, on average, would each require 10 hours of direct service and 2 hours of clinical supervision. BCI calculates that it sustained lost anticipated revenue of $96,500.00 per year for 5 years (the average length of service rendered) as a result, based on revenue generated from similarly situated clients, in addition to other potential clients who never submitted applications because of the publications.

## COUNT I
## DEFAMATION
## (BCI AND DR. ROBINSON V. ALL DEFENDANTS)

35. The Plaintiffs incorporate the foregoing paragraphs as if fully stated herein.

36. The Defendants, as described above and as has in fact occurred, have made defamatory statements about BCI and Dr. Robinson to third parties.

37. The statements made by the Defendants about BCI and Dr. Robinson, as described above and as in fact occurred, are untrue.

38. The statements made by the Defendants about BCI and Dr. Robinson as described above and as in fact occurred were made with knowledge of their falsity or with reckless disregard for their truth or falsity.

39. The statements made by the Defendants as described above and as in fact occurred were of the type that could damage, and have damaged, the reputation of BCI and Dr. Robinson in the community at large. The statements were also of the type that could damage, and have damaged, the professional reputation of BCI and Dr. Robinson.

9

Moreover, the statements were of the type that could impugn, and have impugned, the honesty of BCI and Dr. Robinson.

40. The Defendants made the statements about BCI and Dr. Robinson intentionally, or, at a minimum, negligently.

41. BCI and Dr. Robinson have suffered damages as a result of the actions of the Defendants.

## COUNT II
## TORITIOUS INTERFERENCE WITH ADVANTAGEOUS AND PROSPECTIVE BUSINESS RELATIONS
## (BCI AND DR. ROBINSON V. ALL DEFENDANTS)

42. The Plaintiffs incorporate the foregoing paragraphs as if fully stated herein.

43. Through years of hard work and diligence, BCI and Dr. Robinson have developed advantageous business relationships with clients, prospective clients, employees, prospective employees, school systems, and other professionals.

44. The Defendants have intentionally interfered with the actual and prospective business relationships of BCI and Dr. Robinson.

45. The interference by the Defendants was accomplished by making defamatory statements, and thus it was improper in motive and means.

46. BCI and Dr. Robinson have been harmed and will continue to be harmed by the wrongful conduct of the Defendants.

## COUNT III
## VIOLATION OF G.L. C. 93A, SECTION 11
## (BCI V. AIS)

47. BCI and Dr. Robinson incorporate the foregoing paragraphs as if fully stated herein.

48. By intentionally defaming BCI through purportedly anonymous internet postings orchestrated by its manager, Aoude, for the purpose of injuring BCI's business, AIS has committed unfair and deceptive acts and practices and has engaged in unfair methods of competition in violation of G.L. c. 93A, section 11.

## COUNT IV
## COMMERCIAL DISPARAGEMENT
## (BCI AND DR. ROBINSON V. ALL DEFENDANTS)

49. The Plaintiffs incorporate the foregoing paragraphs as if fully stated herein.

50. The Defendants published statements to third parties, via the Internet postings and blogspot of and concerning the Plaintiffs' services with knowledge of the statements' falsity or with reckless disregard of their truth or falsity;.

51. The Defendants so published the statements where pecuniary harm to the Plaintiffs' interests was intended or foreseeable.

52. The Defendants' publication of the statements resulted in special damages to the Plaintiffs' in the form of pecuniary loss.

11

WHEREFORE, the Plaintiffs pray for the following relief:

1. That the Court enter judgment in favor of the Plaintiffs on all Counts of the Complaint and award them damages sufficient to compensate them for their injuries, along with interest and costs;

2. That the Court treble the damages awarded to them pursuant to Count III, and issue them an award of attorneys' fees and costs.

3. That the Court issue an injunction requiring the Defendants to (a) remove the defamatory postings; (b) take all appropriate steps to have the defamatory postings removed as a search result from Google or any other internet search engine;(c) post a correction in as prominent a manner as the original defamatory posts; and (d) refrain from posting additional defamatory materials about the Plaintiffs.

4. That the Court award such other relief as it deems just and proper.

THE PLAINTIFFS DEMAND A TRAIL BY JURY ON ALL COUNTS SO TRIABLE.

Respectfully Submitted,

Behavioral Concepts, Incorporated and
Jeffrey Robinson, Ph. D.
By their attorney,

David W. Krumsiek, BBO #564564
Perry, Krumsiek & Dolan, LLP
210 Union Wharf
Boston, MA 02109
617-720-4300
617-720-4310 (fax)
dkrumsiek@pkdllp.com

DATE: October 3, 2014